IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALBERT DEWAYNE BANKS *et al.*,

Defendant.

Case No. 13-cr-40060-DDC

**MEMORANDUM AND ORDER**

Defendant Madkins has filed a motion to suppress a baggie of cocaine discovered during an allegedly unlawful stop-and-frisk search (Doc. 374). Madkins argues that: (1) the officer exceeded the permissible scope of a stop-and-frisk search under *Terry v. Ohio,* 392 U.S. 1 (1968); and (2) the officer did not recognize the baggie's contents as cocaine in "plain view." For the reasons explained below, the Court denies Madkins' motion to suppress.

**Background**

The only evidence before the Court about the circumstances surrounding the challenged search is the testimony by Lt. Maverick Campbell and the police affidavit filed by Lt. Campbell. Doc. 395-2. This evidence establishes that on March 17, 2013, Lt. Campbell and Officer Smith were patrolling an area of Junction City, Kansas. The officers drove an unmarked minivan and wore plain clothes. Lt. Campbell overheard information on the radio that other officers were attempting to contact a suspect who was possibly armed and dangerous. The officers in pursuit described the suspect as a black male wearing a red jacket and a red ball cap. While parked in the parking lot of Pancho's Mexican Restaurant on the 400 block of W. 6th Street, Lt. Campbell

1

saw a person matching the description he had heard on the radio. The suspect, who officers later determined was defendant Madkins, appeared "very paranoid" and evasive. Madkins wore bulky clothing, and kept his hands inside his jacket's pockets the entire time that Lt. Campbell observed him. This led Lt. Campbell to believe that he may have been concealing a weapon.

The officers observed Madkins for an unspecified period of time. Eventually, Madkins began approaching the officers' van. When Lt. Campbell asked him what he wanted, Madkins just stared at the officers and did not respond. As Madkins continued to approach, Lt. Campbell placed his firearm by his leg to conceal it. Madkins then leaned in toward the vehicle, causing Lt. Campbell to believe that Madkins may have seen his firearm or badge. Suspecting that Madkins now knew the two were police, Lt. Campbell drew his firearm, ordered Madkins away from the vehicle, and detained him. Lt. Campbell then began a pat-down search.

Lt. Campbell testified that he began the search on Madkins' waist area because "that's where most firearms would be concealed." Because the suspect's clothing was bulky, Lt. Campbell pulled at the waistband in order to loosen the clothing and reveal any concealed weapons. Lt. Campbell did the same to Madkins' jacket. While patting down the waist area, Lt. Campbell noticed a baggie protruding from Madkins' pocket. The bottom of the baggie was facing up, which allowed Lt. Campbell to see the baggie's contents. Based on his training and experience, Lt. Campbell recognized the contents of the baggie as crack cocaine. Lt. Campbell then immediately handcuffed Madkins and placed him under arrest. Once Madkins was in handcuffs, Lt. Campbell continued to pat him down for weapons. Only after handcuffing Madkins and completing the weapons frisk did Lt. Campbell remove the baggie from Madkins' pocket. Lt. Campbell and Officer Smith then took Madkins to the Geary County Detention

Center for booking. A field test and a lab test of the substance confirmed that it was indeed cocaine.

## Analysis

### A. Stop-and-Frisk Searches

Under *Terry v. Ohio*, a stop-and-frisk search is valid if it meets two requirements: (1) the detaining officer must have reasonable suspicion to believe that the suspect has committed or is about to commit a crime; and (2) the scope of the search must be reasonably limited to confirming or dispelling the officer's suspicion. 392 U.S. 1, 30 (1968). *Terry* also held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a "pat-down search" or "weapons frisk" "to determine whether the person is in fact carrying a weapon." *Id.* at 24. But, the scope of the pat-down search should be limited to determining whether the suspect is armed. *Id.* at 26. The government bears the burden to prove that a pat-down search satisfies the conditions of a *Terry* stop. *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

Madkins concedes that the officers had the requisite "reasonable suspicion" to detain him temporarily. Doc. 374 at 5. Madkins also concedes that Lt. Campbell had "reasonable suspicion" to believe that he was armed and dangerous, thereby authorizing Lt. Campbell to conduct a weapons frisk. Madkins argues, however, that after Lt. Campbell completed the weapons frisk, he *continued* searching by shaking Madkins' pockets in hopes of discovering contraband. Only after Lt. Campbell shook Madkins pockets did he discover and seize the baggie of cocaine. The subsequent or continued search, Mr. Madkins argues, constituted an unlawful investigative search of Madkins' person because Lt. Campbell's search focused on

3

discovering contraband rather than weapons. The government argues that there was no separate search following the weapons frisk; rather, Lt. Campbell shook the waistband of Madkins' sweatpants in the course of a lawful frisk aimed at discovering weapons.

Resolving this argument comes down to an assessment of the facts. On this question, the Court finds Lt. Campbell's testimony credible, and Madkins has offered no evidence to contradict his version of the events. The Court finds that Lt. Campbell did not "manipulate" Madkins' pockets in search of contraband, and that he only pulled at some of the baggy portions of Madkins' clothing because doing so was necessary to make a thorough weapons frisk on a subject who reasonably was suspected to be armed and dangerous. Thus, Lt. Campbell executed a weapons frisk consistent with the scope authorized by law.

### B. The "Plain-View" Doctrine

Agents or officers may seize evidence without a warrant if the evidence is in "plain view." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). For a Court to allow evidence seized under the plain-view doctrine, the government must prove three requirements: (1) the officer was lawfully in a position from which to view the item seized while in plain view; (2) the item's incriminating character was "immediately apparent"; and (3) the officer had a lawful right of access to the item itself. *See Horton v. California*, 496 U.S. 128, 136–37 (1990). The only disputed issue is whether the incriminating character of the substance in the baggie was "immediately apparent."

The phrase "'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Texas v. Brown*, 460 U.S. 730, 741 (1983). The level of certainty actually required for an item's incriminating character to

4

be "immediately apparent" under the plain-view doctrine is "probable cause" to believe that the item in plain view is contraband. *Id.* Courts interpret probable cause as a flexible, common-sense standard, which merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" that certain items may constitute contraband. *Carroll v. United States*, 267 U.S. 132, 162 (1925). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required"; the probable cause standard "does not demand any showing that such a belief be correct or more likely true than false." *Brown*, 460 U.S. at 741 (citing *Brinegar v. United States,* 338 U.S. 160, 176 (1949)).

The testimony of Lt. Campbell establishes that he noticed during the weapons frisk a substance in a small baggie protruding from Madkins' pocket. Based on his training and experience, Lt. Campbell recognized the appearance of the substance and the packaging as consistent with crack cocaine. Significantly, Lt. Campbell placed Madkins under arrest immediately after seeing the baggie and before removing the baggie and conducting any further inspection of it. No additional search or inspection (other than seeing the baggie in plain view) was necessary to satisfy Lt. Campbell that the contents of the baggie established probable cause to arrest Madkins. Only after placing Madkins under arrest and completing the weapons frisk did Lt. Campbell remove the baggie from Madkins pocket for further inspection and testing. Thus, the Court concludes that Lt. Campbell had probable cause to believe that the baggie contained crack cocaine based solely on his initial observation of the baggie while it was in plain view.

The only evidence offered by Madkins is a portion of Lt. Campbell's affidavit, which defense counsel relied on for impeachment. That portion of the affidavit states:

> I detained the subject and began to conduct a pat down search on him for
> weapons. In doing so, I shook his sweat pants around the pocket and waistline

> area. I noticed a white plastic baggie protruding from his right sweat pant pocket. I could see the contents at the end of the baggie was a large chunk of a white powdery substance based on my training and experience; I recognized to be consistent with cocaine. I have been in law enforcement for over ten years and am familiar with various narcotics and the packaging of narcotics based on numerous arrests I have made for narcotic possession and/or distribution. *I remove[d the] baggie and noticed it was a large chunk of suspected cocaine.*

Doc. 395-2 at 2 (emphasis added). Madkins argues that the last sentence in this passage suggests that the incriminating character of the baggie was apparent only after Lt. Campbell seized and inspected it. Therefore, Madkins contends, it was not "immediately apparent" that the baggie contained cocaine. The Court recognizes that this sentence, read in isolation, might suggest that Lt. Campbell suspected that the baggie contained cocaine only after he removed it. However, two sentences earlier in the affidavit, Lt. Campbell states that, *before* Lt. Campbell removed the baggie, he "could see the contents at the end of the baggie was a large chunk of a white powdery substance based on my training and experience; I recognized to be consistent with cocaine." Doc. 395-2 at 2. Although the wording is not perfectly clear, the Court understands the affidavit to say that Lt. Campbell suspected that the baggie contained cocaine based both on his initial, plain-view observation of the baggie, and upon a removing it and inspecting it more closely. The Court does not find that this excerpt of Lt. Campbell's affidavit undermines his otherwise credible testimony.

       Madkins also argues that Lt. Campbell's decision to use a field test to confirm the presence of narcotics proves that the baggie's "incriminating character" was not immediately apparent to him. Lt. Campbell testified that it is a department practice to conduct a field test on suspected narcotics if a field test is available, and that he based his decision to conduct a field test on this practice. In this instance, a field test was available to Lt. Campbell, so he used it to confirm the presence of cocaine in the seized baggie. The Court declines to hold that a police

officer's diligence in following departmental best practices for evidence collection and verification should serve as a basis to find the initial seizure of the evidence unlawful.  The Court therefore rejects Madkins argument.  Accordingly, the Court finds that Lt. Campbell's seizure of the cocaine satisfied the requirements for a warrantless seizure under the plain-view doctrine.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Madkins' Motion to Suppress the Fruits of a Search of the Defendant's Person (Doc. 374) is denied.

**IT IS SO ORDERED.**

Dated this 17th day of September, 2014, at Topeka, Kansas.

        **s/ Daniel D. Crabtree**
        **Daniel D. Crabtree**
        **United States District Judge**